(No. 82-CC-1086—

*In re* APPLICATION OF ELIZABETH J. RANDALL.

*Opinion filed October 6, 1982.*

DOGGETT & FORAN (RICHARD M. DOGGETT, of counsel), for Claimant.

917

TYRONE C. FAHNER, Attorney General (EDWARD C. HURLEY III, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

Claimant brought this claim as the designated beneficiary seeking compensation pursuant to the provisions of the Law Enforcement Officers and Firemen Compensation Act (Ill.Rev.Stat. 1981, ch. 48 par. 281 *et seq.*), hereinafter referred to as the Act. Pursuant to an order of this Court her claim was assigned to a commissioner for hearing and a hearing was held July 29, 1982, at the Court of Claims courtroom in Springfield, Illinois.

It appears from the evidence presented that Herbert W. Randall was married to the Applicant. She was his designated beneficiary under the Act. He was employed as an investigator for the Vermilion County Sheriff's Department, and also worked part-time for the village of Catlin as a patrolman. The evidence further showed that a condition of his employment as investigator for Vermilion County was that he was subject to 24-hour call, and that in the event that an incident or an investigation required his presence, this would take precedence over his duties as a patrolman for the village of Catlin.

It was further shown by the exhibits, affidavits, and

testimony that on August 11, 1981, the decedent left his duties with the sheriff's department at 4:00 p.m. and went to his home in Georgetown, Illinois, for dinner. At that time he changed into a uniform of the Catlin Police Department, ate dinner and left in the family automobile at approximately 4:45 p.m. for the village of Catlin. The Applicant testified that she assumed he would stop for gasoline in the family car because she had used the car that day. There was testimony that the decedent was taking the most direct route to the village of Catlin. Further, there was testimony that had he arrived at the home of the chief of police of the village of Catlin, he would have changed vehicles and proceeded upon routine patrol in a marked squad car for the village of Catlin. The tour of duty was to commence at 5:00 p.m. and conclude at 9:00 p.m.

The investigative reports indicate that when the decedent approached the village of Westfield, an automobile operated by a Steven R. Neal appeared at the intersection of Route 150 and Virginia Street at a high rate of speed and was being operated in a reckless manner. In an attempt to overtake another vehicle, Neal was said to have sideswiped and forced said vehicle off the roadway at which point the Neal vehicle proceeded into the northbound lane and hit the decedent's vehicle head on. This evidence was not objected to, not corroborated, and not refuted. The death certificate recites that the decedent was killed immediately from a basal skull fracture as a result of the accident.

Counsel for Applicant and Respondent both seem to agree, and we concur, that the only issue in this case is whether or not the decedent was "killed in the line of duty" as provided by sections 2(e) and 3 of the Act. (Ill.Rev.Stat. 1981, ch. 48, pars. 282(e), 283.) Both counsel waived the filing of briefs and asked the Court to decide

the case on the record. Neither party could cite a previous Court of Claims decision directly on point.

In general, this Court's decisions on the issue have closely paralleled workmen's compensation rules. The rule which has evolved in the field of workmen's compensation and generally applied by this Court is to determine whether the employee, when injured, was at a place where by reason of his employment, he was required to be, or whether he was subject, by reason of his employment, to a hazard to which the general public is not exposed or to which he, by reason of his employment, is exposed peculiarly to a greater degree than the public. We believe this test is within the spirit and intent of the Act and closely summarizes our analysis of all of the prior claims. Even in cases where the decedent died of a heart attack we have tried to discern a direct causal link between the heart attack and some official activity. The statute states in part: " 'killed in the line of duty' means losing one's life as a result of injury received in the *active performance* of duties as a law enforcement officer." (Emphasis added). (Ill.Rev.Stat. 1981, ch. 48, par. 282(e)). Webster's Dictionary defines the word "active" as "characterized by action rather than contemplation" and "produced of or involving action or movement". Therefore we have looked into what exactly the person was doing at the time of his death.

Under workmen's compensation case law it has been held that simply because a law enforcement officer is on call 24 hours a day, any injuries sustained must still be in some way dependent on the claimant's status as a police officer. *Siens v. Industrial Commission* (1981), 84 Ill.2d 361, 481 N.E.2d 749.

Turning to the facts in the case at bar in light of the discussion above, we have a police officer in uniform, in his personal vehicle driving to his place of employment,

with certain conjecture that he may have stopped for gasoline for his personal vehicle. His personal vehicle was not equipped with any radio equipment nor had he been contacted for any police work or activity. It is our opinion that the decedent would not have commenced in the "active performance of duties as a law enforcement officer" until he would have arrived at the residence of the chief of police of the village of Catlin, changed vehicles from his own car to the marked squad car, and begun to patrol or gone about assigned duties from the chief of police. Although there was much testimony concerning the period of time for which he was in fact paid and the exact time of death, we do not find it persuasive, for benefits under the Act are not limited to paid persons. Even though a person may be paid for working certain hours, if he is not actually on the job in the active performance of his duties, he is not within coverage of the Act.

The unfortunate death of Mr. Randall came as a result, in our opinion, of a hazard to which all of the general public is subjected and cannot be linked or related to his employment as a law enforcement officer other than by commuting to his secondary place of employment.

Wherefore, it is hereby ordered that this claim be, and hereby is, denied.